IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **23-11699-G**

Sonny Austin Ramdeo,

Appellant,

- versus -

United States of America,

Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
_____

<u>BRIEF FOR THE UNITED STATES</u>

Markenzy Lapointe
United States Attorney
Attorney for Appellee
99 N.E. Fourth Street
Miami, Florida 33132
(305) 961-9446

Daniel Matzkin
Chief, Appellate Division

Laura Thomas Rivero
Assistant United States Attorney

Armando R. Méndez
Assistant United States Attorney

Of Counsel

**Sonny Austin Ramdeo v. United States, Case No. 23-11699-G**
**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list set forth below is a complete list of the persons and entities previously included in the certificate of interested persons ("CIP") included in the appellant's initial brief, and also includes additional persons and entities (designated in bold face) who have an interest in the outcome of this case and were omitted from the appellant's CIP.

Adler, Andrew L.

Adler, Robert E.

**Bank of Nevada subsidiary of Western Alliance Bancorporation (WAL)**

**Baronoff, Peter**

Brannon, Hon. Dave Lee

Caruso, Michael

**Castro, Monica K.**

**Ceridian Corporation**

**Chase Manhattan Bank known as JP Morgan Chase & Co (JPM)**

**Cheron, Francesse Lucius**

Cohen, Ellen L.

Diamond, Alan Samuel

**EZ-Jet GT, Inc.**

**Sonny Austin Ramdeo v. United States, Case No. 23-11699-G**
**Certificate of Interested Persons (Continued)**

Fajardo Orshan, Ariana

Ferrer, Wifredo A.

Foldes, Margaret Y.

**Funk, Kepler**

Gonzalez, Juan Antonio

Greenberg, Benjamin G.

Gyires, Marton

Hopkins, Hon. James M.

**Koslow, Howard**

Lapointe, Markenzy

**Leder, Larry**

Marra, Hon. Kenneth A.

Matthewman, Hon. William

Matzkin, Daniel

**Méndez, Armando R.**

**Mercantile Bank (MBWM)**

**Nucci, Edward C.**

**PayServ Tax, Inc.**

Pleasanton, David Frank

**Sonny Austin Ramdeo v. United States, Case No. 23-11699-G
Certificate of Interested Persons (Continued)**

**PNC Bank (PNC)**

**Promise Healthcare, Inc.**

**Rabinowitz, Adrienne**

Ramdeo, Sonny Austin

**Reid, Hon. Lisette M.**

**Rivero, Laura Thomas**

Rodriguez, Jr., Valentin

Rosenbaum, Richard L.

**Ross, Michael Tyler**

Ryskamp, Hon. Kenneth L.

**Smachetti, Emily M.**

**Success Healthcare, LLC**

**Sun Capital Healthcare Inc.**

**Sanchez, Keith**

**TD Bank (TD)**

United States of America

**Valley National Bank (VLY)**

**Sonny Austin Ramdeo v. United States, Case No. 23-11699-G**
**Certificate of Interested Persons (Continued)**

**White, Hon. Patrick A.**

*s/Armando R. Méndez*
Armando R. Méndez
Assistant United States Attorney

**Statement Regarding Oral Argument**

The United States of America respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

# Table of Contents

**Page:**

Certificate of Interested Persons ................................................................c-1

Statement Regarding Oral Argument ...............................................................i

Table of Contents .......................................................................................... ii

Table of Citations ........................................................................................iv

Statement of Jurisdiction ..............................................................................xi

Statement of the Issues.................................................................................1

Statement of the Case:

     1.    Course of Proceedings and Disposition in the Court Below ...............1

     2.    Statement of the Facts ........................................................................2

          a.    Ramdeo's Offense Conduct........................................................2

          b.    Sentencing Hearing and the Calculation of Restitution ...............4

          c.    Ramdeo Challenges Restitution on Direct Appeal.......................5

          d.    Ramdeo Challenges Restitution in his Audita Querela Petition ...6

          e.    Ramdeo Challenges Restitution in his § 2255 Motion.................8

          f.    Ramdeo's Challenges Restitution in the Instant Coram Nobis Petition.......................................................................................12

     3.    Standards of Review ........................................................................14

Summary of the Argument .........................................................................15

# Table of Contents

## (Continued)

**Page:**

Argument:

      The District Court Correctly Denied Ramdeo's Coram Nobis Petition........16

  A.  Writs of Error Coram Nobis ...................................................16

  B.  Coram Nobis Relief is Unavailable Because Ramdeo is Still in Custody ...................................................................................18

  C.  Coram Nobis Relief is Unavailable Because Ramdeo Fails to Show There Are or Were No Other Available Avenues of Relief ...........................20

  D.  Coram Nobis Relief is Unavailable Because Ramdeo Fails to Show a Fundamental Error Not Previously Put in Issue or Passed Upon..........24

  E.  Coram Nobis Relief is Unavailable Because Ramdeo Did Not Provide Sound Reasons For Failing to Seek it Earlier........................................27

  F.  Ramdeo Cites No Persuasive Authority for His Position......................28

  G.  Principles of Finality Counsel Against the Availability of Coram Nobis in Ramdeo's Case ...................................................................31

Conclusion ...........................................................................................33

Certificate of Compliance ........................................................................34

Certificate of Service ..............................................................................35

## Table of Citations

**<u>Cases</u>:**                                                                                            **<u>Page</u>:**

*Alikhani v. United States*,

    200 F.3d 732 (11th Cir. 2000) .................................................................. 14, *passim*

*Barnickel v. United States*,

    113 F.3d 704 (7th Cir. 1997) ...................................................................29

*Blaik v. United States*,

    161 F.3d 1341 (11th Cir. 1998) ...........................................................22

*Brady v. Maryland*,

    373 U.S. 83 (1963) ................................................................................ 10, *passim*

*Cani v. United States*,

    331 F.3d 1210 (11th Cir. 2003) ...........................................................31

*Carlisle v. United States*,

    517 U.S. 416 (1996) .............................................................................. 17, 18

*Gonzalez v. United States*,

    792 F.3d 232 (2d Cir. 2015) ..................................................................29

*Jones v. Hendrix*,

    599 U.S. 465 (2023) ...............................................................................32

*Kaminski v. United States*,

    339 F.3d 84 (2d Cir. 2003) ....................................................................29

**Table of Citations**

**(Continued)**

<u>Cases</u>:                                                                    <u>Page</u>:

*LeCroy v. United States*,

   739 F.3d 1297 (11th Cir. 2014) ...........................................................15

*Lowery v. United States*,

   956 F.2d 227 (11th Cir. 1992) .............................................................25

*Moody v. United States*,

   874 F.2d 1575 (11th Cir. 1989) ................................................... 25, 31

*Ochran v. United States*,

   273 F.3d 1315 (11th Cir. 2001) ..........................................................20

*Pena v. United States*,

   812 F. App'x 976 (11th Cir. 2020) .....................................................28

*Powers v. United States*,

   996 F.2d 1121 (11th Cir. 1993) ..........................................................20

*Ragbir v. United States*,

   No. CV 17-1256 (KM), 2019 WL 9522419 (D.N.J. Jan. 25, 2019)

   aff'd, 950 F.3d 54 (3d Cir. 2020). ......................................................26

*Ramdeo v. United States*,

   760 F. App'x 900 (11th Cir. 2019) .............................................. 2, 7, 8

**Table of Citations**

**(Continued)**

<u>**Cases**</u>:                                                                                    <u>**Page**</u>:

*Ramdeo v. United States*,

    No. 21-10112, 2022 WL 3418674 (11th Cir. Aug. 17, 2022)................................2

*Strategic Def. Int'l, Inc. v. United States*,

    745 F. Supp. 2d 1214 (M.D. Fla. 2010) ................................................................26

*United States v. Adley*,

    783 F. App'x 914 (11th Cir. 2019)........................................................................19

*United States v. Brown*,

    413 F.2d 878 (9th Cir. 1969) ................................................................................30

*United States v. Camacho-Bordes*,

    94 F.3d 1168 (8th Cir. 1996) ................................................................................30

*United States v. Craig*,

    907 F.2d 653 (7th Cir.) ................................................................................... 25, 30

*United States v. Dean*,

    749 F. App'x 873 (11th Cir. 2018)........................................................................27

*United States v. Denedo*,

    556 U.S. 904 (2009) ..............................................................................................19

**Table of Citations**

**(Continued)**

<u>Cases</u>:                                                                                                  <u>Page:</u>

*United States v. Garcia*,

    181 F.3d 1274 (11th Cir. 1999)..........................................................30

*United States v. George*,

    676 F.3d 249 (1st Cir. 2012) .............................................................17

*United States v. Hatten*,

    167 F.3d 884 (5th Cir. 1999)..............................................................30

*United States v. Keane*,

    852 F.2d 199 (7th Cir. 1988)........................................................ 31, 32

*United States v. Marchesseault*,

    692 F. App'x 601 (11th Cir. 2017).....................................................25

*United States v. Mills*,

    221 F.3d 1201 (11th Cir. 2000)............................................. 16, *passim*

*United States v. Mischler*,

    787 F.2d 240 (7th Cir. 1986)....................................................... 28, 29

*United States v. Obasohan*,

    318 F. App'x 798 (11th Cir. 2009).....................................................31

**Table of Citations**

**(Continued)**

<u>Cases</u>:                                                                                                          <u>Page</u>:

*United States v. Peter*,

   310 F.3d 709 (11th Cir. 2002) .................................................................. 12, 17, 18

*United States v. Puentes*,

   803 F.3d 597 (11th Cir. 2015) ................................................................................23

*United States v. Ramdeo*,

   682 F. App'x 751 (11th Cir. 2017) ........................................................... 1, *passim*

*United States v. Rutigliano*,

   887 F.3d 98 (2d Cir. 2018) .....................................................................................17

*United States v. Sawyer*,

   239 F.3d 31 (1st Cir. 2001) ....................................................................................30

*United States v. Sheffield*,

   939 F.3d 1274 (11th Cir. 2019) .............................................................................10

*United States v. Singh*,

   836 F. App'x 331 (5th Cir. 2021) ..........................................................................24

*United States v. Sloan*,

   505 F.3d 685 (7th Cir. 2007) .................................................................................26

**Table of Citations**

**(Continued)**

<u>Cases</u>:                                                                                                        <u>Page</u>:

*United States v. St. Hubert*,

   918 F.3d 1174 (11th Cir. 2019) ................................................................. 32

*United States v. Stoneman*,

   870 F.2d 102 (3d Cir. 1989) .................................................................... 26

*United States v. Wilkozek*,

   822 F.3d 364 (7th Cir. 2016) ........................................................ 25, 26, 31

<u>**Statutes & Other Authorities**</u>:

18 U.S.C. § 1343 ........................................................................................... 1

18 U.S.C. § 3664 ............................................................................... 7, 21, 23

18 U.S.C. § 3742 ......................................................................................... 23

28 U.S.C. § 1291 ......................................................................................... xi

28 U.S.C. § 1651 ................................................................................... xi, 16

28 U.S.C. § 2255 ............................................................................. xi, *passim*

Fed. R. App. P. 4 ......................................................................................... xi

Fed. R. App. P. 26.1 .................................................................................. c-1

Fed. R. App. P. 32 ...................................................................................... 34

Fed. R. Crim. P. 35 .................................................................................... 23

**Table of Citations**

**(Continued)**

<u>**Other Authorities:**</u>                                                              <u>**Page**</u>:

*United States v. Ramdeo*,

2016 WL 1579514 (11th Cir. Apr. 18, 2016) ............................................................4

## Statement of Jurisdiction

This is an appeal from a final order of the United States District Court for the Southern District of Florida denying a petition for writ of error coram nobis. The district court entered its order denying the petition on May 15, 2022 (3CVDE 8).[1] The district court had jurisdiction pursuant to 28 U.S.C. § 1651(a). Ramdeo timely filed a notice of appeal (3CVDE 9). Fed. R. App. P. 4(a). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

---

[1]    We refer to docket entries in the underlying criminal case, SDFL Case No. 12-80226-CR, as "CRDE." We refer to docket entries in Ramdeo's audita querela litigation, SDFL Case No. 17-81110-CV, as "1CVDE." We refer to docket entries in Ramdeo's 28 U.S.C. § 2255 litigation, SDFL Case No. 18-81452-CV, as "2CVDE." And we refer to docket entries in Ramdeo's coram nobis litigation, SDFL Case No. 23-80295-CV, as "3CVDE."

**Statement of the Issues**

In 2015, the district court ordered Ramdeo to pay $21,442,173 in restitution. This Court affirmed restitution on direct appeal. Ramdeo then continued challenging restitution through a writ of audita querela and a 28 U.S.C. § 2255 motion. Both those efforts were unsuccessful. In 2023, Ramdeo attacked restitution through coram nobis. Did the district court correctly deny Ramdeo's petition for writ of error coram nobis, which was his fourth challenge to restitution, because he remains in custody?

**Statement of the Case**

**1.     Course of Proceedings and Disposition in the Court Below**

Appellant Sonny Ramdeo pleaded guilty in 2013 to one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (CRDE 70; 71). The district court sentenced Ramdeo to 240 months' imprisonment and ordered him to pay $21,442,173 in restitution to Promise Healthcare, Inc. ("Promise") and Success Healthcare, LLC (CRDE 268; PSI ¶ 25). This Court affirmed the criminal judgment, including the restitution order. *United States v. Ramdeo*, 682 F. App'x 751 (11th Cir. 2017) ("*Ramdeo* I").

In September 2017, Ramdeo filed a petition for writ of audita querela, attacking the restitution order (1CVDE 1). The district court denied Ramdeo's audita querela petition (1CVDE 4; 6). This Court affirmed because Ramdeo's arguments "were appropriate for direct appeal" and "[t]he petition [did] not raise an

1

unaddressed issue that is so fundamental in character that it render[ed] the district court's restitution judgment invalid." *Ramdeo v. United States*, 760 F. App'x 900, 904 (11th Cir. 2019) ("*Ramdeo* II").

In October 2018, Ramdeo filed a 28 U.S.C. § 2255 motion, again challenging restitution (2CVDE 1; 28). The district court denied the § 2255 motion (2CVDE 56; 64). After granting a limited certificate of appealability, this Court held that the limitations imposed by the district court were reasonable in light of Ramdeo's "abusive litigation habits," as evidenced by his numerous noncompliant motions in his criminal case and habeas proceedings. *See Ramdeo v. United States*, No. 21-10112, 2022 WL 3418674, at *2 (11th Cir. Aug. 17, 2022) ("*Ramdeo* III").

In 2023, Ramdeo filed a petition for writ of error coram nobis, which raised his fourth challenge to restitution (3CVDE 1). The district court denied it "[b]ecause Petitioner is in custody" (3CVDE 8:4). Ramdeo filed a timely notice of appeal (3CVDE 9).

## 2. <u>Statement of the Facts</u>

### a. **Ramdeo's Offense Conduct**

This Court's direct appeal opinion summarized Ramdeo's crime:

Beginning in early 2005, Mr. Ramdeo served as the payroll manager at Promise Health Care, Inc., a company dedicated to providing management services to hospitals throughout the United States. He oversaw the payment of wages and related payroll taxes for the company.

2

Around January of 2010, the owners of Promise were informed that they would be personally liable for missed payroll tax payments and any accrued interest and penalties. To execute the proper payments, Promise used Ceridian Corporation, an independent payroll company that it had hired in October of 2006 to complete its payroll processing. Mr. Ramdeo acted as the liaison between the two companies. Promise used Ceridian's services until about February of 2010.

After that, the process for making payments to the proper taxing authorities was brought in-house at Promise. During an audit period, Mr. Ramdeo suggested that Promise hire PayServ Tax, Inc., a company he represented was one of Ceridian's subsidiaries and worked with companies to help them make timely tax payments in periods of distress. In fact, PayServ was Mr. Ramdeo's company and it had no connection to Ceridian.

At Mr. Ramdeo's direction, Promise transferred funds to PayServ for tax payment purposes and for fees as payment for PayServ's services. According to PayServ's records, Promise was the company's only client and the funds in its account were attributed only to Promise's transfers. No official contract between Promise and PayServ existed in Promise's records.

For almost two years, Mr. Ramdeo deposited into PayServ's account funds that were supposed to be used to pay Promise's payroll taxes. He diverted them to start and operate his own charter airline company, EZ-Jet GT, Inc. PayServ, through Mr. Ramdeo, transferred more than $20 million to EZ-Jet. To conceal his scheme, Mr. Ramdeo transferred funds from an EZ-Jet account at PNC Bank to another EZ-Jet account at Valley National Bank.

In October of 2012, Promise's auditors requested additional information concerning PayServ. When Mr. Ramdeo found out about this, he created a website for the company, linked it to Ceridian's website, and created an email from a fake email address to himself confirming that PayServ was collecting and disbursing payroll taxes on Promise's behalf. That same day, Mr. Ramdeo left Promise's office and never returned. Authorities arrested him in December of 2012.

3

*Ramdeo* I at 752–53.

> **b.    Sentencing Hearing and the Calculation of Restitution**

Ramdeo's sentencing spanned three days (CRDE 202; 203; 285).[2] On the first day, Ramdeo attempted to represent himself with his attorney as standby counsel (CRDE 202:2). At the beginning of the hearing, Ramdeo moved for the appointment of a forensic accountant to review the evidence, and again moved to withdraw his guilty plea (CRDE 202:7–10). The court explained that it had already considered and rejected the issue of the withdrawal of his guilty plea, and that a forensic accountant was not necessary because Ramdeo had acknowledged in the factual proffer that Promise had transferred more than $20 million to him that was not used to pay taxes (CRDE 202:6–8).

After days of hearing evidence and arguments from the parties, the district court ruled that a reasonable initial estimate of the amount of the loss was $22,357,771.79 (CRDE 285:218–20). The court further ruled that, while there was no justification for reducing the loss amount based on compensation that Ramdeo earned as payroll director, it would give him the benefit anyway by reducing the total loss amount by $173,598.10 (CRDE 285:218–20). "[G]iving him the benefit of the doubt," the court provided Ramdeo a further reduction of $742,000 for negotiating

---

[2]    For a more thorough summary of the sentencing hearing, see the government's brief on direct appeal. *United States v. Ramdeo*, 2016 WL 1579514, at **21–32 (11th Cir. Apr. 18, 2016).

a tax abatement, although the court also believed that Ramdeo was not entitled to that either (CRDE 285:218–20). The court found the total loss amount was $21,442,173 (CRDE 285:220).

The district court set the restitution amount as equal to the loss amount (CRDE 285:220). In doing so, the court acknowledged that restitution should be higher because of the "out-of-pocket expenses" that Promise suffered (CRDE 285:220). But ultimately the court set restitution equal to the loss amount because there was no possibility that Ramdeo would be able to compensate Promise for even the actual loss amount (CRDE 285:220).

### c.    Ramdeo Challenges Restitution on Direct Appeal

On direct appeal, Ramdeo challenged (among other things) the amount of restitution imposed. *See Ramdeo* I at 758. Ramdeo "argue[d] that the district court should have reduced the amount by the tax abatements PayServ obtained for Promise" and that the district court did not properly consider his inability to pay the ordered restitution. *Id*.

This Court affirmed the district court's decisions. *Id*. As to the restitution issue, the Court explained that the district court did, in fact, consider Ramdeo's argument that the total amount be reduced by a tax abatement figure. *Id*. Indeed, "[t]he district court gave Mr. Ramdeo 'the benefit of the doubt' and reduced the loss amount—and as a result, the restitution amount—by $742,000 (in addition to

5

another reduction the district court granted in an effort to be fair)." *Id*. The Court also noted that Ramdeo incorrectly relied on the Victim and Witness Protection Act, instead of the Mandatory Victim Restitution Act ("MVRA"). *Id*. The MVRA requires the district court to order restitution without regard to a defendant's ability to pay. *Id*.

### d.  Ramdeo Challenges Restitution in his Audita Querela Petition

In September 2017, Ramdeo filed a *pro se* petition for a writ of audita querela, in which he again attacked restitution (1CVDE 1). Similar to what he argued on direct appeal, Ramdeo claimed that the district court did not apply the procedures established by the MVRA (1CVDE 1:4). He argued that the district court erred in allowing the victims to provide unsworn statements in support of restitution and in "not order[ing] the probation officer to conduct an independent accounting of the losses" (1CVDE 1:5–6). According to Ramdeo, the district court "generated a windfall for the victims" and violated his due process rights (1CVDE 1:5–6).

A magistrate judge issued a report recommending that the district court deny Ramdeo's petition (1CVDE 4). The magistrate judge first construed the petition as one seeking a writ of error coram nobis (1CVDE 4:4–5). The magistrate judge then provided three primary rationales for recommending that the petition be denied: (1) Ramdeo did not explain why he did not present these claims on direct appeal; (2) Ramdeo could not meet the requirements in order to obtain coram nobis relief; and

(3) "petitioner's request for a recalculation of restitution should be more properly brought by way of a criminal motion, pursuant to 18 U.S.C. § 3664(o)" (1CVDE 4:7–9).

Ramdeo then filed a "motion for reconsideration," primarily arguing that the magistrate judge improperly construed his petition as one seeking a writ of error coram nobis (1CVDE 5). He said that he "carefully selected the audita querela framework" (1CVDE 5:2).

The district judge construed the "motion for reconsideration" as objections to the report and recommendation and affirmed the report and recommendation in its entirety after conducting "a *de novo* review of the entire file" (1CVDE 6).

On appeal, Ramdeo argued that the district court erred in construing his audita querela petition as one seeking a writ of error coram nobis. *Ramdeo* II at 901. This Court affirmed the district court's denial of the petition. *Id*. The Court agreed with the district court that Ramdeo's challenge to the district court's restitution calculation was better cast as a petition for writ of error coram nobis, rather than a petition for writ of audita querela. *Id*. at 903. But, assuming that the district court should have analyzed his *pro se* petition as written, it held that Ramdeo was not entitled to a writ of audita querela. *Id*.

The Court explained that Ramdeo's "underlying claims—that the district court did not provide him with affidavits as required by statute and did not reduce

7

his restitution obligation by certain tax payments—attacks the validity of the restitution judgment, not its enforcement. Such arguments were appropriate for direct appeal, which Mr. Ramdeo had in this case." *Id*. at 904. The Court affirmed because Ramdeo's "petition does not raise an unaddressed issue that is so fundamental in character that it renders the district court's restitution judgment invalid." *Id*.

Because this Court concluded that Ramdeo's claimed errors did not justify a writ of audita querela, it declined to address whether a writ of audita querela is available to attack a restitution judgment related to a criminal proceeding, and whether a writ of error coram nobis is available to a person in custody to challenge restitution. *Id*. at 903 n.2.

### e.    Ramdeo Challenges Restitution in his § 2255 Motion

In October 2018, Ramdeo filed a *pro se* 28 U.S.C. § 2255 motion, which contained claims similar to those found in his audita querela petition (2CVDE 1; 28). Ramdeo claimed (among other things) that: (1) trial counsel was deficient for failing to object to or raise the issue of loss on direct appeal, and the trial court failed to adhere to proper procedures for determining loss and restitution; and (2) that the "court based it's [sic] loss and restitution [findings] on false and unsupported information," violating due process (2CVDE 28:13–15). As in his audita querela petition, Ramdeo argued that the district court erred by not complying with the

8

MVRA, such as by not requiring affidavits from the victims as to restitution (2CVDE 28:14).

The government opposed Ramdeo's § 2255 motion (2CVDE 35). The government contended that many, if not most, of Ramdeo's claims were procedurally barred because he either raised those issues on direct appeal and lost, or because he could have asserted those issues on direct appeal but chose not to (2CVDE 35:4–9). The government also rebutted Ramdeo's motion on the merits (2CVDE 35:9–19).

In reply, Ramdeo argued that "[t]he record was incomplete as a failure of the trial court to adhere to the procedural rules which deprived Ramdeo of a meaningful review of the matter. The Court based on the government's affirmative misrepresentation denied Ramdeo access to the documents necessary to create a factual record for appeal" (2CVDE 43:12). Ramdeo also contended that the district court should have "provide[d] additional funding" to hire an accountant (2CVDE 43:12).

Ramdeo then filed a motion for leave to supplement with additional authority, arguing (among other things) that the government "presented a false accounting prepared by the victim to conceal their failure to pay payroll taxes" (2CVDE 47:1). In arguing that the loss and restitution amounts were incorrect, he claimed that an agent "testified [at sentencing] that $5 million [ ] remained unaccounted for, but

despite repeated requests [ ] failed to produce her accounting to support her testimony. Either she testified falsely, or is violating Brady[3]" (2CVDE 47:3). The government filed a response to the motion for leave to supplement (2CVDE 49), and Ramdeo replied (2CVDE 50).

In July 2020, a magistrate judge issued a report and recommendation advising the district court to deny Ramdeo's motion (2CVDE 56). The magistrate judge found that Ramdeo's claims—particularly the district court's sentencing findings regarding loss and restitution—were procedurally barred because this Court had considered and rejected them on direct appeal (2CVDE 56:35). The report further explained that Ramdeo's ineffective assistance of counsel claims failed because he could not demonstrate either deficient performance by his former attorneys or prejudice (2CVDE 56:35–36). Specifically, as to the attacks on restitution, the magistrate judge found (among other things) that Ramdeo's ineffective assistance of counsel claim was meritless and his reliance on this Court's opinion in *Sheffield*[4] misplaced (2CVDE 56:35–37). The report concluded by observing that Ramdeo's

---

[3]    *Brady v. Maryland*, 373 U.S. 83 (1963).

[4]    In a motion to supplement his § 2255, Ramdeo cited to *United States v. Sheffield*, 939 F.3d 1274 (11th Cir. 2019) (2CVDE 47). In *Sheffield*, this Court held on direct appeal that "where the loss from each fraudulent tax credit is the same fixed amount, and figuring out the total is a simple computational exercise, '[r]estitution . . . requires an exact figure.' . . . Otherwise, the IRS would receive an inappropriate windfall from the restitution order." 939 F.3d at 1278 (citation omitted).

"rambling, vague, speculative and conclusory Petition . . . blames everyone else but himself for his conviction, sentence and current predicament," but that "a very careful review of the entire record establishes that Ramdeo's shotgun claims are meritless [and] frivolous" (2CVDE 56:42).

Ramdeo objected to the report and recommendation (2CVDE 61) and later filed a supplemental authority letter (2CVDE 63). In his objections, Ramdeo continued challenging restitution. For example, he objected that:

> Had the court been made aware of the changes the credits that the Court awarded to reduce the loss and restitution, approximately $1,000,000 would have been the basis for both sentence and restitution, not 21,442,173.00. Moreover, the victims would have been different.

(2CVDE 61:8). He also objected to restitution because:

> based on the schedules before the Court, it shows the Court awarded the victims a windfall of almost $10 million in restitution and over sentenced Mr. Ramdeo by more than $10 million [ ] because of falsified accounting prepared by the victims and filed with the Court by the Government without first verifying it's [sic] accuracy.

(2CVDE 61:10). He concluded:

> In sum, had the appropriate procedural process been followed there is no question that the loss amount and restitution would not have been $20 plus million [ ], and resulted in the harsh sentence that was imposed.

(2CVDE 61:11).

In December 2020, the district judge affirmed the report and recommendation in its entirety after conducting "a *de novo* independent review of the file" (2CVDE 64).

### f. Ramdeo's Challenges Restitution in the Instant Coram Nobis Petition

In February 2023, Ramdeo filed a *pro se* petition for a writ of error coram nobis, once again challenging restitution and presenting claims substantively the same as those in his audita querela petition and § 2255 motion (3CVDE 1). Ramdeo requested relief "[a]s a result of ineffective assistance of counsel and further financial analysis constituting new evidence that was not available at the time of the restitution hearing" (3CVDE 1:1). He claimed that "[t]hroughout the underlying criminal proceedings, [he] repeatedly requested the Court order the Government to turn over all Brady materials relating to actual loss" (3CVDE 1:2).[5] His petition presented three additional issues: (1) whether courts are permitted to estimate restitution; (2) whether being "in custody" makes him ineligible to pursue coram nobis relief; and (3) whether coram nobis can be used to challenge restitution (3CVDE 1:3). He also casted doubt on this Court's decision in *United States v. Peter*, 310 F.3d 709 (11th Cir. 2002)[6]: "Therefore the court's suggestion in *Peter* that

---

[5]   Ramdeo claimed *Brady* violations prevented a proper restitution calculation (3CVDE 1:17).

[6]   In *Peter*, this Court concluded that "[a] writ of error coram nobis is a remedy

coram nobis is only available to those out of custody [is] unsupported. . . . If the Eleventh Circuit reading is correct, then what remedy is available to collaterally attack a restitution order premised on a fundamental error?" (3CVDE 1:9–10).[7] Attempting to explain why he did not seek relief earlier, Ramdeo said: (1) that the record was incomplete; (2) that he had limited resources; and (3) that this Court's case law did not permit him to raise the issue (3CVDE 1:18–19).

The government opposed the petition for four primary reasons (3CVDE 6:8). First, Ramdeo's claims were procedurally barred because they represented his "fourth attempt at relitigating his restitution amount" (3CVDE 6:9–10). Second, the district court lacked jurisdiction to modify Ramdeo's restitution (3CVDE 6:10–11). Third, his claims were not cognizable under coram nobis (3CVDE 6:11). Fourth, Ramdeo did not meet the "out-of-custody" requirement for coram nobis relief (3CVDE 6:12).

In reply, Ramdeo stated that his claims "focused on the violation of his Due Process rights, the failure to comply with the Brady obligation, the improper

---

available to vacate a conviction when the petitioner has served his sentence and is no longer in custody, as is required for post-conviction relief under § 2255." 310 F.3d at 712.

[7]    Ramdeo's petition contained additional arguments: (1) that the district court erred in not allocating restitution to individual victims; and (2) that the government presented false and misleading evidence as to tax payments and restitution generally (3CVDE 1:15–18).

estimation of restitution, and the appropriateness of using" coram nobis in this context (3CVDE 7:2).[8] "The fact that this is his fourth attempt," Ramdeo explained, "does not diminish his right to pursue this avenue of relief" (3CVDE 7:2). He alleged "that the government failed to properly account for tax payments made . . . and that false testimony was presented by a witness" (3CVDE 6:4).[9] Ramdeo further noted that "[w]hile the restitution amount was affirmed on direct appeal by the Eleventh Circuit, this does not necessarily preclude relief on coram nobis. The standard for coram nobis . . . allows for a broader scope of review and is focused on correcting errors of the most fundamental character" (3CVDE 7:6).

The district court denied the coram nobis petition "[b]ecause Petitioner is in custody" (3CVDE 8:4). Ramdeo's timely appeal followed (3CVDE 9).

## 3.    <u>Standards of Review</u>

This Court reviews the district court's denial of a petition for writ of error coram nobis for abuse of discretion. *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000). This Court may affirm the decision of the district court on any

---

[8]    Elsewhere, he stated that his petition "centers around the fundamental errors of the miscalculation of restitution, false representations and testimony, and withholding of material information by the government" (3CVDE 7:4).

[9]    Ramdeo alleged false testimony by a witness in his § 2255 litigation as well (2CVDE 47:3).

ground supported by the record. *LeCroy v. United States*, 739 F.3d 1297, 1312 (11th Cir. 2014).

## Summary of the Argument

The district court did not abuse its discretion in denying Ramdeo's petition for a writ of error coram nobis. Ramdeo has attacked his restitution judgment again and again: first on direct appeal, then via audita querela, then via a § 2255 motion, and now via coram nobis. But because coram nobis is unavailable to him, this fourth effort fares no better than the first three.

As the district court concluded, because Ramdeo is still in custody, coram nobis relief is unavailable to him. That is so because coram nobis is appropriate only when there is and was no other available avenue of relief. And Ramdeo has had (and has made use of) other avenues of relief. In fact, he has challenged restitution on three other occasions. Additionally, in the MVRA, Ramdeo has a statutory vehicle to challenge restitution. Coram nobis is therefore unavailable to him.

Nor does Ramdeo satisfy the requirement that he raise a matter of fact of the most fundamental character which renders the proceeding itself irregular and invalid. Furthermore, his instant attack on restitution is an old tune played on a new instrument; he has already raised it three times to no avail. And Ramdeo cannot justify his failure to seek coram nobis relief earlier.

15

Lastly, permitting Ramdeo to obtain coram nobis relief would run against interests in finality. Federal courts and Congress have made clear that finality can outweigh error correction even when a prisoner's liberty interest is implicated – and here, it is not.

**Argument**

**The District Court Correctly Denied Ramdeo's Coram Nobis Petition.**

Ramdeo argues that the district court legally erred when it denied his coram nobis petition. With no binding legal authority to support him, his only argument is that "the writ of error coram nobis must remain available" because he has presented a unique case "in which no statutory remedy is available or adequate" (Brief at 10). But this Court has never held that coram nobis relief is available to petitioners who are in custody. And even if it were available to petitioners in custody, Ramdeo fails to show that he has had no other remedy available to him. Indeed, he has been unsuccessfully attacking his restitution order since his direct appeal. He also has not shown that his claims are of the most fundamental character and has not provided sound reasons for failing to avail himself of coram nobis earlier.

A.    **Writs of Error Coram Nobis.**

The All Writs Act, 28 U.S.C. § 1651, gives federal courts authority to issue writs of error coram nobis. *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000). "A writ of error coram nobis is a remedy available to vacate a conviction

16

when the petitioner has served his sentence and is no longer in custody, as is required for post-conviction relief under 28 U.S.C. § 2255." *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002). The writ of error coram nobis is "an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." *Mills*, 221 F.3d at 1203. Put differently, "[t]he further a case progresses through the remedial steps available to a criminal defendant, the stiffer the requirements for vacating a final judgment . . . The writ of error coram nobis lies at the far end of this continuum." *United States v. George*, 676 F.3d 249, 258 (1st Cir. 2012) (citations omitted). "The burden is a heavy one because a court reviewing a petition for *coram nobis* relief must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner." *United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) (citation and quotations omitted). The Supreme Court has noted that it is difficult to imagine a case today in which coram nobis relief "would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 424, 429 (1996) (quotations omitted).

A writ of coram nobis is appropriate only when there "is and was no other available avenue of relief." *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000). And the writ is available only when the error involves "a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *Id.* (quotations omitted).

A writ of error coram nobis is "traditionally available only to bring before the court factual errors material to the validity and regularity of the legal proceeding itself, such as the defendant's being under age or having died before the verdict." *Carlisle*, 517 U.S. at 429 (quotations omitted). But fundamental errors, for example, "do not include prejudicial misconduct in the course of the trial, the misbehavior or partiality of jurors, and newly discovered evidence." *Mills*, 221 F.3d at 1204 (quotations omitted). Before a court may consider a coram nobis petition, a petitioner must first present sound reasons for failing to seek relief earlier. *Id*.

Ramdeo argues that the district court legally erred by denying his bid to invoke an extraordinary remedy of last resort to review, yet again, the restitution amount it ordered in 2015. Ramdeo's argument finds no support in this Court's precedent or elsewhere.

### B.    Coram Nobis Relief is Unavailable Because Ramdeo is Still in Custody.

The district court denied Ramdeo's coram nobis petition because he is still in custody (3CVDE 8:4). It is well established that coram nobis relief is generally not available to petitioners who are still in custody. *See Peter*, 310 F.3d at 712. Consistent with this Court's precedent, the district court correctly denied the coram nobis petition because Ramdeo remains in custody.

Although the All Writs Act confers on federal courts the authority to grant extraordinary relief through a writ of error coram nobis, "the All Writs Act . . . [is]

18

not a source of subject-matter jurisdiction." *United States v. Denedo*, 556 U.S. 904, 913 (2009). Instead, "an application for the writ is properly viewed as a belated extension of the original proceeding during which the error allegedly transpired." *Id*. That belated extension is not authorized when alternative remedies are or were available to a criminal defendant. *Alikhani*, 200 F.3d at 734. Here, Ramdeo availed himself of alternative remedies, as the course of proceedings in this case shows. Thus, the district court in fact lacked jurisdiction to even consider the coram nobis petition.

Ramdeo asks this Court to create an exception to the "out-of-custody" requirement expressly for claims challenging restitution. He complains that the district court cited no Circuit precedent holding that being in custody "precludes" a coram nobis challenge to "*non*-custodial aspects of a sentence" like restitution (Brief at 16). But the converse is also true. Ramdeo cites no Circuit precedent carving an exception to the custody rule. This Court should decline his invitation to create an exception in his case. Because even if this Court were to ignore the "out-of-custody" requirement, Ramdeo's restitution claim still cannot meet the narrow requirements for a coram nobis petition. *See United States v. Adley*, 783 F. App'x 914, 916 (11th Cir. 2019) ("even if there is an exception to the out-of-custody requirement for

*coram nobis* relief for claims that cannot be raised under § 2255, that exception does not apply to [Ramdeo]"). We turn to those now.[10]

### C. Coram Nobis Relief is Unavailable Because Ramdeo Fails to Show There Are or Were No Other Available Avenues of Relief.

A writ of coram nobis is appropriate only when there "is and was no other available avenue of relief." *Alikhani*, 200 F.3d at 734. Coram nobis is not appropriate here because multiple avenues of relief have been available to Ramdeo.

For starters, Ramdeo has challenged restitution on three prior occasions. He first challenged restitution on direct appeal, "argu[ing] that the district court should have reduced the amount by the tax abatements PayServ obtained for Promise" and that the district court did not properly consider his inability to pay the ordered restitution. *Ramdeo* I at 758. This Court affirmed, explaining that the district court had in fact considered Ramdeo's argument as to the tax abatements. *Id*. And that, under the MVRA, the district court must order restitution without regard to a defendant's ability to pay. *Id*.

---

[10]    Although the district court denied Ramdeo's petition on the single ground that he was still in custody, this Court can affirm on any basis apparent in the record. *See Ochran v. United States*, 273 F.3d 1315, 1318 (11th Cir. 2001) (may affirm if correct on any legal ground); *Powers v. United States*, 996 F.2d 1121, 1123–24 (11th Cir. 1993) ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.").

Next, Ramdeo challenged restitution by seeking a writ of audita querela. In doing so, Ramdeo claimed that the district court did not apply the procedures established by the MVRA (1CVDE 1:4). He argued that the district court erred in allowing the victims to provide unsworn statements in support of restitution and in "not order[ing] the probation officer to conduct an independent accounting of the losses" (1CVDE 1:5–6). After construing it as one seeking coram nobis relief, the magistrate judge recommended that the petition be denied because: (1) he did not explain why he did not present these claims on direct appeal; (2) he could not meet the requirements in order to obtain coram nobis relief; and (3) "petitioner's request for a recalculation of restitution should be more properly brought by way of a criminal motion, pursuant to 18 U.S.C. § 3664(o)" (1CVDE 4:4–5, 7–9). The district judge adopted the magistrate's recommendation (1CVDE 6).

On appeal, Ramdeo argued that the district court erred in construing his audita querela petition as one seeking coram nobis. *Ramdeo* II at 901. This Court explained that Ramdeo's "underlying claims—that the district court did not provide him with affidavits as required by statute and did not reduce his restitution obligation by certain tax payments—attacks the validity of the restitution judgment, not its enforcement. Such arguments were appropriate for direct appeal, which Mr. Ramdeo had in this case." *Id*. at 904. This Court affirmed because Ramdeo's "petition does

not raise an unaddressed issue that is so fundamental in character that it renders the district court's restitution judgment invalid." *Id.*

Ramdeo even challenged restitution in his § 2255 motion, claiming (among other things) that: (1) trial counsel was deficient for failing to object to or raise the issue of loss on direct appeal, and the trial court failed to adhere to proper procedures for determining loss and restitution; and (2) that the "court based its loss and restitution [findings] on false and unsupported information," violating due process (2CVDE 28:13–15). [11] The magistrate judge found that Ramdeo's claims—particularly the district court's sentencing findings regarding loss and restitution—were procedurally barred because this Court had considered them on direct appeal (2CVDE 56:35). The report further explained that Ramdeo's ineffective assistance of counsel claims failed because he could not demonstrate either deficient performance by his former attorneys or prejudice (2CVDE 56:35–37). The district judge affirmed the report and recommendation after conducting "a *de novo* independent review of the file" (2CVDE 64).

What's more, Ramdeo has statutory remedies available to challenge restitution. The statute governing the enforcement of a restitution order imposed

---

[11]    Of course, we recognize this Court's precedent holding that claims challenging restitution are not cognizable under § 2255. *Blaik v. United States*, 161 F.3d 1341, 1342–43 (11th Cir. 1998). Nevertheless, the district court did in fact consider Ramdeo's attacks on restitution in his § 2255 motion, and the merits of that decision are not before this Court in this appeal.

under the MVRA lists the circumstances in which a district court is authorized to modify a restitution order. 18 U.S.C. § 3664(o)(1), (2). That statute states that restitution may be: (1) corrected under Fed. R. Crim. P. 35; (2) directly appealed and modified under 18 U.S.C. § 3742; (3) amended under 18 U.S.C. § 3664(d)(5) to include subsequently discovered losses under certain circumstances; or (4) adjusted under 18 U.S.C. §§ 3664(k), 3572, or 3613A to provide for scheduled payments or to alter the timing of scheduled payments based on a change in circumstances or default. 18 U.S.C. § 3664(o)(1).

Section 3664(o) identifies the limited circumstances under which the restitution portion of a sentence may be "appealed," "modified," "corrected," "amended," and/or "adjusted." *See, e.g., United States v. Puentes*, 803 F.3d 597, 599 (11th Cir. 2015) ("18 U.S.C. § 3664(o) provides an exhaustive list of the ways in which a mandatory restitution order can be modified.").

None of the provisions contemplated in § 3664(o) permit the district court to consider Ramdeo's collateral challenge to restitution. As this Court held in *Puentes*,

> Under the Mandatory Victims Restitution Act, restitution was mandatory in Puentes's case notwithstanding any other provision of law, including Rule 35. And, as we see it, a court may only alter a sentence imposing mandatory restitution in the limited circumstances set forth in 18 U.S.C. § 3664(o).

*Puentes*, 803 F.3d at 610. The Fifth Circuit, in a coram nobis case, similarly "reject[ed] the possibility of collateral attacks on restitution awards." *United States*

23

*v. Singh*, 836 F. App'x 331, 333 (5th Cir. 2021). In sum, there is a statutory mechanism for altering a restitution order in certain circumstances and Ramdeo cannot circumvent what Congress has provided for using a common law writ. The MVRA reflects Congress's clear intent regarding the finality of a restitution order.

### D.    Coram Nobis Relief is Unavailable Because Ramdeo Fails to Show a Fundamental Error Not Previously Put in Issue or Passed Upon.

A writ of coram nobis is available only when the alleged error involves "a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *Alikhani*, 200 F.3d at 734. Ramdeo's fourth attack on restitution contains no fundamental error.

On appeal, Ramdeo contends that, "due to ineffective assistance of trial counsel, *Brady*/discovery violations, and further financial analysis constituting new evidence unavailable at the time of the restitution hearing," the restitution order was based on erroneous and incomplete information that he could not challenge before (Brief at 5).[12]

---

[12]    In his coram nobis petition, Ramdeo simply stated that "[a]s a result of ineffective assistance of counsel and further financial analysis constituting new evidence that was not available at the time of the restitution hearing demonstrates that the restitution judgment was obtained in violation of his right to due process." (3CVDE 1:1). That is the whole of Ramdeo's vague and conclusory "ineffective assistance" and "new evidence" claims.

But none of his claims would even be "fundamental," at least according to how this and other courts have defined the term.[13] In fact, an attack on the restitution portion of a criminal judgment does not fall within coram nobis's ambit at all. *See, e.g.*, *Lowery v. United States*, 956 F.2d 227, 230 (11th Cir. 1992) (rejecting coram nobis petition that implicated only sentence defendant had received because error was not fundamental);[14] *Moody v. United States*, 874 F.2d 1575, 1577 (11th Cir. 1989) ("[a] claim of newly discovered evidence relevant only to the guilt or innocence of the petitioner is not cognizable . . . if it were . . . the writ would no longer be extraordinary.") (citations omitted); *United States v. Wilkozek*, 822 F.3d 364, 369 (7th Cir. 2016) ("His claims of error relate only to the restitution

---

[13]    This Court, after agreeing that it was better cast under coram nobis, concluded that Ramdeo's audita querela "petition [did] not raise an unaddressed issue that is so fundamental in character that it renders the district court's restitution judgment invalid." *Ramdeo* II at 904. This Court also affirmed Ramdeo's restitution order on direct appeal. *See Ramdeo* I. So, the law-of-the-case doctrine precludes Ramdeo's fourth challenge to restitution. *See United States v. Marchesseault*, 692 F. App'x 601, 603 (11th Cir. 2017) ("The law-of-the-case doctrine bars relitigation of issues that a court decided explicitly or by necessary implication in a prior appeal.").

[14]    The Seventh Circuit has explained that coram nobis petitions should be rejected "except where there is a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm to the petitioner." *United States v. Craig*, 907 F.2d 653, 658 (7th Cir.), *amended*, 919 F.2d 57 (7th Cir. 1990). And those disabilities "must be causing a present harm; it is not enough to raise purely speculative harms or harms that occurred completely in the past. Second, the disability must arise out of the *erroneous conviction* . . ." *Id.* (emphasis added). In other words, the petitioner must show that his conviction was obtained based on error. Ramdeo has not even alleged that his convictions are invalid.

component of his criminal sentence . . . An error of this type is not of the 'most fundamental character' as to render the conviction invalid . . . This kind of error doesn't cast doubt on Wilkozek's guilt.") (citations omitted); *United States v. Sloan*, 505 F.3d 685, 697 (7th Cir. 2007) ("Restitution orders that sweep too much conduct into their calculations . . . do not rise to the level of a constitutional violation . . ."); *United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989) ("The error must go to the jurisdiction of the trial court, thus rendering the trial itself invalid.").[15]

Ramdeo's claims not only fail to meet the "fundamental" threshold, they are also more accurately construed as just another previously raised and/or decided attack on the restitution order. For example, Ramdeo previously claimed ineffective assistance of counsel[16] as it relates to restitution, and both the magistrate judge and the district judge rejected that claim (2CVDE 56:35–37; 64). He also argued in his § 2255 litigation that possible violations of *Brady* took place during the sentencing

---

[15]    District courts have similarly defined "fundamental." *See, e.g.*, *Strategic Def. Int'l, Inc. v. United States*, 745 F. Supp. 2d 1214, 1222–23 (M.D. Fla. 2010) (claims of newly discovered evidence, prejudicial misconduct during trial, *Brady* violations, and of insufficient evidence do not meet the fundamental character threshold); *Ragbir v. United States*, No. CV 17-1256 (KM), 2019 WL 9522419, at *27 (D.N.J. Jan. 25, 2019) ("this claim of [ineffective assistance of counsel], confined to the determination of dollar loss at the sentencing phase, does not set forth a fundamental error that warrants *coram nobis* relief"), *aff'd*, 950 F.3d 54 (3d Cir. 2020).

[16]    He raises a garden-variety ineffective assistance of counsel claim, relating only to the restitution portion of his sentence. That sort of ineffective assistance claim does not reach the "fundamental" threshold.

hearing in determining restitution (2CVDE 47:3). The magistrate judge also rejected Ramdeo's claim of "newly presented evidence" (2CVDE 56:9 n.2). In short, Ramdeo presents claims which were either previously put at issue or were in fact passed upon.

### E.    Coram Nobis Relief is Unavailable Because Ramdeo Did Not Provide Sound Reasons For Failing to Seek it Earlier.

Before a court may consider a coram nobis petition, a petitioner must first present sound reasons for failing to seek relief earlier. *Mills*, 221 F.3d at 1204.

Even if there were no out-of-custody requirement, Ramdeo still would not be entitled to coram nobis relief because he has not provided sound reasons for failing to seek relief earlier as to his claims. In fact, his brief provides no reason at all.[17] *See United States v. Dean*, 749 F. App'x 873, 874–75 (11th Cir. 2018) (holding in a coram nobis case that "mere ignorance of the law is insufficient to excuse Dean's delay in seeking relief").

Ramdeo also does not explain the gap of almost eight years between his sentence and the filing of the coram nobis petition. Ramdeo, at the latest, was aware

---

[17]    Before the district court, Ramdeo did attempt to explain why he did not seek relief earlier (3CVDE 1:18–19). But the reasons he gave—that the record was incomplete; that he had limited resources; and that this Court's case law did not permit him to raise the issue—are not the sort that would excuse his tardiness. Furthermore, on reply in his § 2255 litigation (filed in 2019), Ramdeo provided similar reasons for not presenting certain restitution arguments earlier on direct appeal (2CVDE 43:12).

of his claims by 2019, when he filed his second amended § 2255 motion. *See Pena v. United States*, 812 F. App'x 976, 977 (11th Cir. 2020) ("Pena was sentenced in 2010 to five years of probation, which expired in 2015, but he still waited roughly four years after that to file the instant petition.").

### F.    Ramdeo Cites No Persuasive Authority for His Position.

Ramdeo suggests that this is an issue of first impression in this Circuit and that there is a Circuit split regarding whether coram nobis relief is available to challenge restitution while in custody. But only one Circuit, the Seventh, has allowed an in-custody prisoner to file a coram nobis petition to challenge restitution, and that case is readily distinguishable.

*Mischler* was limited to its unique facts. In that case, the district court found that the defendants, who were convicted of Medicare fraud, must pay approximately $216,000 in restitution. *United States v. Mischler*, 787 F.2d 240, 243–44 (7th Cir. 1986). The defendants had objected to the amount of restitution at the change-of-plea hearing and the sentencing hearing, and the government even conceded that the audit, which supplied the basis for restitution, was "grossly inaccurate." *Id.* at 243, 246. The Seventh Circuit held that the district court erred because it: (1) relied on inaccurate information; (2) did not determine the amount of damages with certainty; and (3) did not provide the defendants with adequate opportunity to be heard on the question of amount of actual loss. *Id.* at 247. *Mischler* allowed coram nobis because

of the "fundamental unfairness" in that particular case and it appears to have been the first review of the restitution imposed (with no direct appeal having been taken). *Id*. at 241 n.1. What's more, *Mischler* was decided in 1986 before the statutory remedies of the MVRA were available. Based on *Mischler*'s limited holding and its specific facts, Ramdeo's attempt to extrapolate a categorical rule regarding the availability of coram nobis to prisoners "in custody" is uncalled for.

The other Seventh Circuit case Ramdeo cites is also readily distinguishable. In that case, the court held "only that § 2255 is not available to challenge an order of restitution imposed as part of a criminal sentence." *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). In fact, because *Barnickel* was a § 2255 case, it did not implicate coram nobis at all. The court simply mentioned *Mischler* in passing. *Id*.

Finally, Ramdeo's reliance on the Second Circuit's decision in *Kaminski* is also misplaced. In *dicta*, one judge, writing only for himself, suggested that coram nobis should be available to "in custody" prisoners. *See Kaminski v. United States*, 339 F.3d 84, 89–91 (2d Cir. 2003); *Gonzalez v. United States*, 792 F.3d 232, 238 n.31 (2d Cir. 2015) (characterizing *Kaminski*'s discussion of coram nobis as *dicta*). Needless to say, that is not a holding. The *dicta* is also unhelpful to Ramdeo; *Kaminski* involved § 2255, not coram nobis. *Id*. at 91.

29

On the other hand, the Fifth Circuit, in a published opinion, stated that "[t]he writ of *coram nobis* is an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate his criminal conviction . . . Since Hatten was in custody when he filed his motion, the writ of *coram nobis* was not available to him." *United States v. Hatten*, 167 F.3d 884, 887 n.6 (5th Cir. 1999). Other circuits have similarly explained. *See United States v. Sawyer*, 239 F.3d 31, 37 (1st Cir. 2001) ("Unlike a writ of habeas corpus, a writ of coram nobis is issued once the petitioner is no longer in custody. Its legal effect is to vacate the underlying conviction."); *United States v. Craig*, 907 F.2d 653, 656 (7th Cir.), *amended*, 919 F.2d 57 (7th Cir. 1990) ("Coram nobis petitions are brought only after a convicted defendant's release from federal custody . . . Thus, there is no societal or individual interest in prompt adjudication of the petition while a prisoner is languishing in jail.") (citation omitted); *United States v. Camacho-Bordes*, 94 F.3d 1168, 1172 n.6 (8th Cir. 1996) ("the main difference between the two being that coram nobis relief is available when the defendant is no longer in custody for the applicable conviction, while custody is a prerequisite for habeas relief."); *United States v. Brown*, 413 F.2d 878, 879 (9th Cir. 1969) ("Coram Nobis is not available, since he is still in custody.").

This Court has also stated that coram nobis is unavailable to an individual who is still in custody. *See United States v. Garcia*, 181 F.3d 1274, 1274 (11th Cir. 1999) ("Coram nobis relief is unavailable to a person, such as the appellant, who is still in

custody."); *United States v. Obasohan*, 318 F. App'x 798, 800 (11th Cir. 2009)

("The writ of error *coram nobis* is a remedy available to vacate a conviction when

the petitioner has served his or her sentence and is no longer in custody because 'the

results of the conviction may persist.'") (quotations omitted).

### G.    Principles of Finality Counsel Against the Availability of Coram Nobis in Ramdeo's Case.

To permit Ramdeo to continue attacking restitution using coram nobis would

collide directly with Congress's stated interest in the finality of criminal judgments.

The finality interest is heightened where, as here, the petitioner's liberty is not at

stake.

Coram nobis is available only as a very last resort because otherwise the

remedy "would prolong litigation once concluded, thus thwarting society's

compelling interest in the finality of criminal convictions." *Moody*, 874 F.2d at 1577.

And "[t]he reason to bend the usual rules of finality is missing when liberty is not at

stake. Courts must conserve their scarce time to resolve the claims of those who have

yet to receive their *first* decision*." United States v. Keane*, 852 F.2d 199, 203 (7th

Cir. 1988).[18] Indeed, only errors implicating a defendant's guilt "justify the cost of

putting aside the interest in finality." *Wilkozek*, 822 F.3d at 368; *Obasohan*, 318 F.

---

[18]    This Court has explained that "limiting restitution challenges to sentencing proceedings and direct appeal also serves the equally significant goal of judicial economy." *Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003).

App'x at 800 ("[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.") (quotations omitted). And here, the costs would be great.

As explained above, Ramdeo has had multiple opportunities to attack restitution. So, this is not even a case where Ramdeo has yet to receive a "first decision." "At some point the judicial system must close old files and turn to the future, regretfully accepting the risk of error lest the quest for perfect justice become the enemy of adequate justice." *Keane*, 852 F.2d at 206; *United States v. St. Hubert*, 918 F.3d 1174, 1190 (11th Cir. 2019) (Pryor, William C.J. respecting denial of reh'g en banc) ("Congress has emphatically rejected an error-correction-at-all-costs model of postconviction review."); *Jones v. Hendrix*, 599 U.S. 465, 480 (2023) ("The inability of a prisoner with a statutory claim to satisfy those conditions does not mean that he can bring his claim in a habeas petition under the saving clause.[19] It means that he cannot bring it at all. Congress has chosen finality over error correction in his case.").

---

[19]    The exception that Ramdeo seeks has broad implications, not limited to restitution. Such an exception arguably may also permit petitioners to use coram nobis to present statutory claims (not previously available) attacking their convictions or sentence. That would directly circumvent what the Supreme Court decided, and Congress intended.

## Conclusion

For the foregoing reasons, this Court should affirm the district court's order denying Ramdeo's coram nobis petition.

Respectfully submitted,

Markenzy Lapointe
United States Attorney

By:   *s/Armando R. Méndez*
ARMANDO R. MÉNDEZ
Assistant United States Attorney
Florida Bar No.: 1010764
99 Northeast 4th Street
Miami, Florida 33132
Telephone: (305) 961-9446
Email: Armando.Mendez@usdoj.gov

Daniel Matzkin
Chief, Appellate Division

Laura Thomas Rivero
Assistant United States Attorney

Of Counsel

**Certificate of Compliance**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,087 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-based typeface using Microsoft Word 2016, 14-point Times New Roman.

*s/ Armando R. Méndez*
Armando R. Méndez
Assistant United States Attorney

**Certificate of Service**

I hereby certify that four copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 23rd day of October 2023, and that, on the same day, the foregoing brief was filed using CM/ECF and served via CM/ECF on Andrew L. Adler, Assistant Federal Public Defender, counsel for Sonny Austin Ramdeo.

<u>*s/ Armando R. Méndez*</u>
Armando R. Méndez
Assistant United States Attorney

*cbe*